Proceed when ready. Thank you, your honors. Good afternoon. May it please the court. My name is Elizabeth Musick, and I represent Mr. Christopher Ceja and his appeal from the U.S. District of Montana Billings Division. For timing purposes, I would like to reserve five minutes of my time for rebuttal. Mr. Ceja is appealing the denial of two pretrial motions, a motion to suppress and a motion to dismiss for a speedy trial violation. I will take each matter in turn. With respect to the motion to suppress, the government can't have it both ways. They want to have their cake and eat it too. They argue that the reason for the traffic stop was for failure to yield to a pedestrian and that there was a lawful basis for the stop of Mr. Ceja. They also want to argue that the reason for the traffic stop was to investigate suspicions of drug trafficking and that there was a lawful stop of Mr. Ceja on that basis as well. So the problem that the government faces with this argument is that if the traffic mission stop was to investigate suspicions of drug trafficking, why didn't they investigate that crime from the outset of the stop? The government acts like it's impossible to conduct two investigations at once. And maybe it would be under some circumstances, but under the facts of this case, it really would have been quite simple. Why would they have to, though? There are two reasons. Why does the government have to opt and do a simultaneous? Why can't it proceed with one, perhaps one that it thinks is perhaps least likely to be challenged? Your Honor, that's a good question. I think if they have all of the information available to them at the outset of the traffic stop, Terry requires that the duration of the stop has to be the least intrusive possible. And I think that if if they truly are investigating two things and they have all of that information prior to stopping the individual, they need to take the most expeditious manner of investigating that. And in this case, what authority supports that proposition? I'm sorry, Your Honor. I couldn't hear you. Authority support. Excuse me. What authority supports that proposition? Judge Dennis asked you, suppose they can do either or both. And you're now projecting this notion that, well, they are required to choose one or the other and do the most expeditious. And I've never heard that proposition. I think perhaps you misunderstood my meaning, Your Honor. I didn't mean that they had to choose one or the other. I'm arguing that in the facts based on the facts of this case, I believe that the government that the officers could have investigated both things simultaneously. And my question is, what compelled them to do so? What authority supports the proposition that they have to do two things at once just because it might be physically possible? I think Terry does, Your Honor. Terry is not premised on having an independent ground. That's true. So what case says when you've got two independent grounds, you're required to sort through them and figure out what's the fastest way to conclude both? And doing both at the same time is not a particularly natural answer. Most people try to do one thing at a time. Sure. So what authority requires the law enforcement to do both at once? I think United States v. Evans out of this court is the authority that provides for the manner in which I believe the investigation should have been conducted. Officer Schnellbach was the officer who pulled over Mr. Seha for failure to yield to a pedestrian. He could have easily conducted the traffic mission related to checking the status of Mr. Seha's driver's license, checking for warrants, issuing him a traffic citation. While Officer Lausch, who arrived on the scene at the exact same time, who had his drug detecting canine in his patrol car with him the whole time, he could have easily asked Mr. Seha to step out of the vehicle and run his dog on the vehicle while Officer Schnellbach was issuing the citation and explaining it to Mr. Seha. Well, I'm just looking at your brief citation to Evans, and it begins on page 27. It says, The Ninth Circuit has recognized that if a stop is extended to allow a canine sniff, the law enforcement officer must have, quote, independent reasonable suspicion to support such a prolongation, end quote. That doesn't say to me they've got to do it at the same time. It says you've got to have a reason to prolong. And the court appeared to find, the district court appeared to find, that there was sufficient ground to prolong for the dog sniff. So how does Evans support the proposition that, no, even if you've got independent basis to conduct a dog sniff, you've got to get it done at the same time you're getting done the traffic stop? Sure, Your Honor. Evans was decided based on a Nevada Supreme Court decision, State v. Beckman. And I believe that the facts of Beckman. It doesn't seem to help because this episode didn't take place in Nevada. That is true, Your Honor, but U.S. v. Evans is Ninth Circuit precedent. But if it's precedent based on applying the requirements on a Nevada officer, it's not going to speak to Ninth Circuit precedent requiring a Montana officer to do something. I mean, I haven't looked at Evans yet. I will. But if the basis of evidence is applying Nevada law, because the event took place in Nevada and presumably it was a Nevada law enforcement officer, I don't see how that's going to speak to what happens in this case involving a Montana officer. That is true, Your Honor. But in this case, the officers unequivocally testified numerous times that they understood the fact that other jurisdictions require officers to investigate in a manner that I'm suggesting. So Nevada may require what you're arguing and the Montana officers may have known that other states, possibly knowing even Nevada was one of them, requires that. I'm still looking for the authority that makes them do it, authority that speaks to us. Because Evans doesn't seem to be it. Fair enough, Your Honor. That's why we're here. I believe that Rodriguez also speaks to the aspects of Terry that I was touching on earlier. A quote from Rodriguez that I think is beneficial, begin quote, Like a Terry stop, the tolerable duration of police inquiries in the traffic stop context is determined by the seizure's mission. To address the traffic violation that warranted the stop and attend to related safety concerns. End quote. 135 Supreme Court at 1614. In this case, the stop, I think it was about a 14 or 15 minute time interval before the dog, I think, was brought out. And so, you know, a traffic stop, in my experience, would normally take five, six, seven minutes. So the prolongation, I don't know, was about seven minutes more than should have occurred. Is that about right? Is that your assessment? It was eight minutes, Your Honor. Eight minutes of detention. That shouldn't have been. That's correct. But regardless of whether, you know, you say they'd have to do it both, I mean, if at the point at the end of the first six minutes there was then enough suspicion to do the drug search and warrant that extra eight minutes of prolonging, I don't see what the problem is. I mean, you may take issue with whether there's enough evidence, but if one were to find that there was enough at that point of reasonable suspicion of probable cause, then I'm not sure what the problem is. Sure. And I have argued in my brief that I don't believe that there was reasonable suspicion for either the stop to be based on the failure to yield to the pedestrian or suspicions of drug trafficking. I'm not conceding those arguments. But for purposes here today, I thought the court would want to hear about other things, as it seems you do. The information that I believe the government is basing their purpose for the stop being for drug trafficking, all of that information was in the hands of the officers at the time of the stop. And so I don't believe there's any reason that they need to separate their investigation into two separate investigations. And that's exactly how the officers have classified it here. Both officers testified unequivocally that in situations like this, where they have both a traffic violation to investigate and also a suspicion of drug trafficking, the policy of their organization is to investigate the traffic matter first, complete that investigation, and then launch a separate investigation into the suspicion of drug trafficking. And so that's where I'm arguing that the prolongation should not have occurred, because they had the ability to conduct both of those investigations simultaneously in a manner that would not have resulted in a prolonged and unlawful detention of my client. Although one could see the benefit from the officer's point of view, is that sometimes you get information during the traffic stop that then enhances the cause with respect to the drug. And in this case, the questioning, the reaction. And, of course, we see this all the time. The reaction, the furtive, you know, nervousness, you know, it seems like that. All the exact things that the officers said in their testimony. Well, okay, and you may take issue with the credibility, but nonetheless that is a reason why you start with the more mundane, you know, traffic stop often to see what the reaction is. And do they answer the question, well, what are you doing in town, where are you going? And if the answers don't click, it kind of then adds up with the other reasons that you had to suspect. So it's not, it seems like it's a rational way to conduct enforcement? I guess one could see it that way. My client did make it very clear to the officers throughout the course of his interactions with them during what the officers have classified as the traffic stop portion of their investigation. He made it very clear that he didn't want to converse with them casually. He didn't want to answer their questions. He wanted them to issue their citation and let him be on his way. And so I think that that speaks even more to the fact that this is intentional. So what in the record shows that the officers can do both investigations at the same time? They actually testified that they could. I can show you. So on page 32, Officer Schnellbach specifically testified as follows. Even though case law throughout the United States allows for what you're saying, running a dog on a vehicle during a traffic stop during the normal course of a traffic stop, that has been affirmed by courts in the United States as okay to do, our attorneys here in the county don't want us to press the boundary of doing that. It's not common practice here. So, yeah, we could have performed the dog sniff during the traffic stop, I guess, but that's not how we do it here generally. I've never seen it done that way, even though I know throughout the United States that it is an acceptable practice, but we did not do it because that's not how we do it here. Is there anything in the record as to whether doing it at the same time would have produced a total time that was less than the time that was taken? Your Honor, I don't believe I remembered to ask the officers that during the suppression hearing. However, I think common sense just dictates. An inference can be drawn. I'm just curious if the question came up. The question did not come up in the lower court, Your Honor. I just think common sense dictates that if both officers were to work simultaneously, it would have eliminated the prolonged detention that occurred because of the fact that they separated this investigation into two phases. Well, where was your client during that time? He was in his vehicle during the traffic stop portion of their investigation while Officer Schnellbach was questioning him, went back to his patrol car, ran his license, checked for warrants, made sure that the vehicle was validly registered, all of those things. My client was just seated in his vehicle. And then as soon as he had printed the citation, Officer Schnellbach proceeded over to the vehicle, opened the driver's side door, asked him to step out of the vehicle, and then at that point they asked my client for consent to run the drug dog on the vehicle. My client declined to consent, and the officers stated that they were going to run the dog anyways. What difference would it have made? Let's say they ran the dog sniff earlier on. Dog sniff would have dog sniffed and, I mean, would it make a difference? I think if they had done it in that manner, I don't think I would be here today, Your Honor. But I mean in terms of the outcome. I understand it makes a difference too, giving you an argument to make. But in terms of, and I don't know if this is analogous to inevitable discovery or whatever the doctrine is, harmless error, but what difference would it make? If they had started earlier, it would have resulted, it seems like, unless you can show that that delay somehow caused the dog, you know, the thing to react differently. I'm not sure. Your Honor, I don't think that the delay would have occurred at all if they had run the dog simultaneously while Officer Schnellbach was issuing the citation. Right, but they would have found the evidence and he would have been arrested earlier. I think likely, yes. Okay. Okay, why don't you save some time for rebuttal. Thank you, Your Honor. May it please the Court. Tim Tatarka of the District of Montana on behalf of the United States. I'd like to begin with the District Court actually made a factual finding on this point. At excerpts of the record, page 26, the District Court noted that while Schnellbach confirmed the information, conducted the traffic stop, Lausch stood next to Ceja to ensure that Ceja did not use his phone and to watch his movement. So that's what, with respect to that small point, that is what the officers, the canine officer was doing during the traffic stop. Officer safety? Yes, officer safety, evidence preservation. But to take a step back, this stop was the culmination or one of the culminating points of a two-year investigation into Mr. Ceja and Mr. Santillas, among others. And it was one in which there had already been previous seizures and previous arrests, including arrests that stemmed from the information from this confidential informant. That's at excerpts of the record, page 146. There was a little bit of a discussion about that in the briefs as to whether this was one investigation, but there had been a number of other cases made from it. And the reason I bring that up is because the whole point of conducting this as a traffic stop was not because of a lack of reasonable suspicion and growing into probable cause. It was in order to provide a break between protect the information, the law enforcement source of information. In other words, Mr. Ceja, if there was a traffic stop and then a dog sniff, Mr. Ceja could report back that he just got unlucky and this happened, as opposed to we have a leak inside our organization. That's explained at excerpts of the record, page 55. So it is true that there was, in fact, both, and the district court says this specifically at excerpts of the record 32. There was both the reasonable suspicion to conduct a drug investigation and reasonable suspicion for the traffic stop, in this case, failure to yield to a pedestrian. So an outright drug-based stop could have blown the lid on the investigation? That's correct. He could have texted or done something to tell his cohorts? Yeah. They stopped me right, you know, if they would have came in as soon as he pulled into the hotel, you know, came in with lights flashing, then it would have been clear that that was because this was a setup from the beginning. Whereas, at least plausibly, this could have been a traffic stop and then a, and then springing into a drug investigation. Evans and Rodriguez, and Your Honor, I don't think that Evans is much more than a reiteration of the principles of Rodriguez. This court's, you know, this court's analysis following from Rodriguez, that if you're going to go beyond the mission of a traffic stop, you have to have independent reasonable suspicion of another crime in order to prolong it. There isn't anything in Rodriguez or Evans that says this sort of, that you have to investigate, if you have independent, an independent crime to investigate, that that must be done, you know, contemporaneously. In other words, Mr. Ceja was reasonably detained for the purposes of the traffic stop, and then reasonably detained for the purposes of a drug investigation. There just isn't anything that says you can't do, you know, do those things serially. The last point that I want to make with respect to the unique factor, feature of Montana law, what the officer was referring to there is, unlike, so Montanans, under the Montana Constitution, there's a heightened right to privacy. Montana has found that a dog sniff around the, around a vehicle is a search and requires reasonable suspicion. Unlike under federal law, where, where only the prolongation is an issue. The sniff itself is not a search. That doesn't really come into play here because we think there was reasonable suspicion from the beginning. But that explains, that's what he was talking about when he was saying we do things a little differently in Montana. That's actually the whole reason why there's a search warrant in this case at all. The automobile exception would apply under Fourth Amendment law. Montana applies a higher right to privacy, which protects the, which says you need a warrant even, even for a search of a vehicle. That might also explain, I think the officer testified, or one of them, that usually we ask for consent, you get it. It would be the standard part of the practice if the sniff itself is deemed a search under Montana law. Yeah, and, and, but, but I, I think even in general you do the, if you can get it under consent, then you have two boxes to check rather than just one. Well, felt and suspenders. That's the way of life in our line of work, right? That's right. Get it more than once, you do. If, if the court doesn't have any further questions, I'll be the first not to work overtime today. You'll be docked, no doubt. No doubt. Thank you very much. Counsel. Thank you. The government began their argument today by stating that Officer Lausch was needed to stand next to the vehicle and watch my client in the vehicle to make sure that he didn't attempt to use his phone for officer safety. But I don't believe that that's exactly necessary because officers conduct traffic stops on a daily basis without having a backup officer. It's very common practice that there's only one officer in the field when they pull someone over, as they did in the case of Mr. Seha for failure to yield to a pedestrian, allegedly. But they had reason not to view him as the average motorist who got pulled over for something. That may be true, Your Honor. However... Well, if that's the case, then you have a second officer. I mean, if their suspicions, and we won't have time today, but you've argued as to whether their suspicions were solid enough to provide an independent crown. But their suspicions certainly exist in their minds, and if they have reason to think this person's involved in large-scale drug dealing, that's the kind of situation where you would expect a second officer to be watching to make sure that something doesn't happen to Officer Number One in the meantime or that the suspect doesn't pull out his phone and call his confederates and say, get here and extract me from this situation. I mean, I'm not sure telling me that most traffic stops take place with just one officer really tells me anything pertinent to this case. Well, these officers were not familiar with the scale of this drug investigation. They had never heard of my client before. They did not know the underlying basis of the investigation. They were just told, there's a black GMC Yukon, California plates, here's the plate number, we suspect that this vehicle has a delivery of drugs. Do they need to know anything more to know that this isn't your average traffic stop? I don't think that it necessarily means that they had higher fears for officer safety, Your Honor. What about the Montana privacy that required full probable cause in order to conduct a dog search? That's a reason, isn't it not? And I definitely don't think that they had probable cause. I've argued in my briefing that I don't believe they even had a particular suspicion. Right, but that was a reason for the procedure that justified why they did things the way they did. At the suppression hearing, the canine handler testified that he made inquiries with the case agent. The case agent called the AUSA, asked, do we need to do a dog sniff? Do we need to get a warrant? She said yes, and so that is why they conducted their investigation in that manner, Your Honor. Thank you, Counsel. Thank you, Your Honors. Have a good afternoon. You too. This case will be submitted, and next up for argument is Playup Inc. v. Mintus.
judges: CLIFTON, BUMATAY, Chen